1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

| | | |
|---|---|---|
| JAIME IGNACIO ESTRADA, | ) | No. C 12-0592 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT; DENYING |
| | ) | PLAINTIFF'S MOTIONS FOR |
| DR. MICHAEL SAYRE and C. MALO-CLINES, | ) | SUMMARY JUDGMENT; |
| | ) | ADDRESSING PENDING MOTIONS |
| | ) | |
| Defendants. | ) | (Doc. Nos. 45, 55, 73, 80, 81, 84, 85.) |
| | ) | |

17      Plaintiff, proceeding *pro se*, filed an amended civil rights complaint pursuant to 42

18 U.S.C. § 1983 against Dr. Michael Sayre ("Dr. Sayre") and Nurse Practitioner C. Malo-Clines

19 ("Malo-Clines") at Pelican Bay State Prison ("PBSP"). Plaintiff alleges that both defendants

20 were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment,

21 and that Malo-Clines retaliated against plaintiff, in violation of the First Amendment.

22      Plaintiff has moved for partial summary judgment on the deliberate indifference claim.

23 (Doc. No. 45.) Defendants have filed an opposition. (Doc. No. 58.) Plaintiff has filed a reply.

24 (Doc. No. 63.) Plaintiff has also filed a motion for summary judgment on the retaliation claim.

25 (Doc. No. 73.) Defendants have filed an opposition (doc. no. 77), and plaintiff has filed a reply

26

27

28

1    (doc no. 80), and a sur-reply[1] (doc no. 81).

2        Defendants have moved for summary judgment.  (Doc. No. 55.)  Plaintiff has filed an

3    opposition (doc. no. 67), and supplemental opposition (doc. no. 72), and defendants have filed a

4    reply (doc. no. 76).

5        Having carefully considered the papers submitted, the court hereby GRANTS

6    defendants' motion for summary judgment, and DENIES plaintiff's motions for summary

7    judgment, for the reasons set out below.

8                                **BACKGROUND**

9        Plaintiff alleges that Dr. Sayre and Malo-Clines were deliberately indifferent to his

10   serious medical needs.  In 2006, plaintiff was diagnosed with degenerative disc disease and

11   sciatica in his left leg.  (Am. Compl. at 5.)  Plaintiff claims that  defendants have interfered with

12   plaintiff's receipt of pain medication which he needed to treat his lower back pain.[2]  Specifically,

13   plaintiff asserts that he was not receiving his pain medications despite making repeated requests

14   for them.  Plaintiff also claims that Malo-Clines retaliated against him for filing a previous

15   lawsuit against her.[3]

16       The following facts are viewed in the light most favorable to plaintiff, and are undisputed

17   unless otherwise indicated.

18       At the time of the events in plaintiff's amended complaint, Malo-Clines was a nurse

19   practitioner at PBSP.  (Doc. No. 55 ("MSJ"), Ex. B ("Malo-Clines Decl.") ¶ 2.)  She was one of

20   plaintiff's medical practitioners.  (*Id.* ¶ 6.)

21

22   _____

     [1]  Plaintiff's motion for leave to file a sur-reply is GRANTED.  (Doc. No. 81.)

23

24   [2]  On July 30, 2013, the court granted in part and denied in part defendants' motion to
     dismiss based on res judicata.  The court ordered that plaintiff's deliberate indifference claims
     concerning events that occurred prior to January 7, 2011, were barred.  Thus, plaintiff's
25   underlying deliberate indifference claim only concerns events occurring after January 7, 2011.

26   [3]  In 2010, plaintiff filed a civil rights actions against Malo-Clines ins *Estrada v. Malo-*
     *Clines*, No. 10-4832 LHK (N.D. Cal.) ("*Estrada I*"), *aff'd*, No. 12-17044, 559 Fed. Appx. 637
27   (9th Cir. March 3, 2014) (unpublished memorandum disposition).

28   Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
     Addressing Pending Motions
     P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

On January 13, 2011, plaintiff was seen by a physical medicine and rehabilitation specialist, Dr. G. Williams, for plaintiff's lower back pain. (*Id.* ¶ 9.) Dr. Williams recommended an exercise program, and suggested that a nonsteroidal anti-inflammatory drug plus Tylenol were appropriate to treat plaintiff's condition. (*Id.*) Dr. Williams also recommended trigger point injections if plaintiff's pain got worse. (*Id.*) On January 27, 2011, plaintiff was seen by his primary care physician in response to plaintiff's request for trigger point injections. (*Id.* ¶ 10.)

On February 3, 2011, plaintiff was seen at the physical therapy clinic for evaluation, and also to establish an in-cell exercise program for plaintiff. (*Id.* ¶ 11.) On February 15, 2011, Dr. Sayre completed a review of plaintiff's case and concluded that Dr. Williams' recommendations were consistent with the treatment that plaintiff had been receiving at PBSP for plaintiff's back pain. (*Id.* ¶ 12.) On February 17, 2011, Malo-Clines saw plaintiff for his lower back pain. (*Id.* ¶ 13.) Malo-Clines recommended that plaintiff stay active, continue the in-cell physical therapy program, and agreed to plaintiff's request to start salsalate at a higher dosage. (*Id.*)

On March 10, 2011, Malo-Clines again saw plaintiff for his lower back pain. (*Id.* ¶ 14.) Malo-Clines noted that plaintiff had tolerated the trigger point injections well and felt improvement. (*Id.*) Malo-Clines continued to recommend in-cell exercise as well as salsalate. (*Id.*) On March 18, 2011, Malo-Clines issued a verbal order renewing plaintiff's prescription of salsalate. (*Id.* ¶ 16.) On March 30, 2011, plaintiff complained of back pain and requested trigger point injections. (*Id.* ¶ 17.) Plaintiff was scheduled for an appointment with his primary care physician. (*Id.*)

On April 15, 2011, Malo-Clines saw plaintiff for back and leg pain. (*Id.* ¶ 18.) Malo-Clines encouraged plaintiff to exercise, continue yoga, and in-cell physical therapy. (*Id.*) Malo-Clines further directed plaintiff to continue with the Tylenol and salsalate, and ordered plaintiff to be scheduled for trigger point injections. (*Id.*) Plaintiff received those injections on April 28, 2011. (*Id.*)

On May 8, 2011, plaintiff requested a refill of his pain medication and was told by "staff"

that plaintiff had no more refills for salsalate left.  (Am. Compl. at 8; Doc. No. 45-2, Ex. D at 2.)

Plaintiff believed the withholding of pain medication was in retaliation for litigating *Estrada I*.

(Am. Compl. at 7.)

On May 13, 2011, plaintiff submitted a health care services request form, stating that he

was still waiting for a renewal of his salsalate for his severe back and leg pain.  (Doc. No. 45-2 at

3.)  That same day, Malo-Clines submitted a verbal order refilling plaintiff's salsalate

prescription for 30 days.  (Malo-Clines Decl. ¶ 20; MSJ, Ex. O at CDCR 2466, 2474.)  On May

15, 2011, plaintiff requested a refill of his Tylenol.  (MSJ, Ex. P at CDCR 2478.)  Nurse Flowers

responded to plaintiff that his medication was refilled.  (*Id.*)

On May 22, 2011, plaintiff requested that his salsalate, ranitidine[4], and Tylenol be

refilled.  (MSJ, Ex. Q at CDCR 2486.)  On May 23, 2011, Nurse Flowers responded that

plaintiff's medications had been refilled.  (*Id.*)  Plaintiff was also seen in the clinic after

complaining about hip and back pain and requesting renewal of his medication.  (Malo-Clines

Decl. ¶ 22.)  Malo-Clines gave a verbal order to renew plaintiff's prescription for ranitidine, and

for plaintiff to receive a urinalysis.  (*Id.*)  On June 3 and 7, 2011, plaintiff was seen at the clinic

after he reported having thoughts of suicide due to his chest, upper back, and shoulder pain.  (*Id.*

¶ 23.)  Dr. Martinelli renewed plaintiff's salsalate prescription for 10 days, and changed

plaintiff's Tylenol prescription.  (*Id.*; MSJ, Ex. R at CDCR 2516.)

On June 15 and 19, 2011, plaintiff requested a refill of his salsalate and Tylenol.  (MSJ,

Ex. T at CDCR 2574-75.)  Plaintiff was told that his Tylenol request was accepted the same day,

and that his salsalate request would be ordered after June 19, 2011.  (*Id.*; Malo-Clines Decl. ¶

25.)  On June 24 and 29, 2011, plaintiff requested refills of his salsalate, and Malo-Clines

responded by giving a verbal order for the prescription to be renewed for 30 days.  (Malo-Clines

Decl. ¶ 27.)

On July 4, 12, and 24, 2011, plaintiff's requests for refills of his Tylenol and salsalate

---

[4] Ranitidine is a medication used to reduce the amount of acid in the stomach.  (Malo-Clines Decl. ¶ 8.)

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

prescriptions were reviewed and granted.  (MSJ, Ex. W.)  On July 8, 2011, Malo-Clines saw plaintiff at the clinic, and he was complaining of pain in his lumbar area, so Malo-Clines administered three shots of lidocaine into plaintiff's lumbar area.  (Malo-Clines Decl. ¶ 29.)

On August 3, 2011, in response to plaintiff's request for an injection for his hip pain, Malo-Clines administered a shot of Kenalog into plaintiff's left hip.  (*Id.* ¶ 30.)  On August 6 and 8, 2011, plaintiff submitted a request for pain medication.  (Doc. No. 67 ("Opp.") at 6; MSJ, Ex. Z at CDCR 2653-54.)  On August 9, 2011, Malo-Clines issued a verbal order to refill plaintiff's salsalate refill prescription request.  (Malo-Clines Decl. ¶ 31.)  On August 17, 2011, plaintiff was seen at the clinic for a follow-up after his Kenalog injection.  (*Id.*)  It was observed that plaintiff ambulated without a limp.  (*Id.*)  On August 24 and 30, 2011, plaintiff requested a refill of his Tylenol and salsalate.  (MSJ, Ex. BB.)  On August 31, 2011, plaintiff's prescriptions for salsalate and Tylenol were refilled.  (Malo-Clines Decl. ¶ 33.)

On September 6, 10, and 14, 2011, plaintiff requested refills of his Tylenol and salsalate. (MSJ, Ex. DD at CDCR 2708-09; Doc. No. 45-2 at 7.)  Malo-Clines denied plaintiff's salsalate prescription refill request pending a urinalysis so that Malo-Clines could verify that plaintiff was actually taking the medication.  (Malo-Clines Decl. ¶ 35.)  On September 15, 2011, after Malo-Clines reviewed the lab work from the urinalysis, she gave a verbal order to refill plaintiff's salsalate prescription for thirty days.  (*Id.*; MSJ, Ex. DD at CDCR 2734, 2738.)

On September 20, 2011, plaintiff requested a refill of his Tylenol and salsalate prescriptions.  (Doc. No. 45-2 at 8.)  Plaintiff was told that his salsalate prescription had expired and that his Tylenol prescription would be handled by a private pharmacy called Maxor.  (*Id.*; Malo-Clines Decl. ¶ 37.)  On September 26, 2011, plaintiff requested a refill of his Tylenol, and was told that it would refill on October 2, 2011 because it was too early to be refilled at that present time.  (MSJ, Ex. EE at CDCR 2573.)  Plaintiff was seen on September 28 and 30, 2011, for testicular pain, hypertension, and high cholesterol.  (Malo-Clines Decl. ¶¶ 38-39.)  The examining physician, Dr. Venes, who examined plaintiff observed that plaintiff was probably being over-treated, so Dr. Venes discontinued plaintiff's aspirin and lipid-lowering medication.

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment; Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

5

1  (*Id.* ¶ 39; MSJ, Ex. HH at CDCR 2767.)

2  On October 5, 2011, plaintiff submitted a health care services request form. (Doc. No.

3  45-2 at 11.) In that request, plaintiff complained that he did not receive his salsalate renewal

4  after seeing the doctor, and has been having problems getting the medication refilled for his back

5  pain. (*Id.*) Medical staff responded that the doctor had ordered Tylenol for plaintiff's pain, and

6  that the doctor would be back next week. (*Id.*) Plaintiff was further told that if he had any

7  questions for the doctor, plaintiff should send in a "request for interview" form. (*Id.*) On

8  October 7, 2011, plaintiff refused to have a routine blood check. (Malo-Clines Decl. ¶ 39; MSJ,

9  Ex. HH at 2774.) That same day, plaintiff submitted another health care services request form.

10  (Doc. No. 45-2 at 12.) In it, plaintiff complained again that he had not received salsalate for his

11  pain. (*Id.*) Plaintiff was again told to use the "request for interview" form to communicate with

12  his primary care physician regarding the issue. (*Id.*) On October 11, 2011, plaintiff's request for

13  a refill of his Tylenol prescription was granted and refilled by Maxor. (Malo-Clines Decl. ¶ 40.)

14  On October 12, 2011, plaintiff requested trigger point injections, and was told that he would see

15  his primary care physician in a few weeks. (MSJ, Ex. JJ at CDCR 2787.) Plaintiff then

16  submitted a "request for interview" form asking for salsalate for his pain. (Doc. No. 45-2 at 13.)

17  Plaintiff was told that he did not have a refill of his prescription because he had no active

18  salsalate prescription. (*Id.*) On October 16, 2011, plaintiff requested a refill of his salsalate

19  prescription, complaining that he had been out of salsalate for weeks. (MSJ, Ex. JJ at CDCR

20  2789.) On October 18, 2011, plaintiff was seen at the clinic in response to his requests for

21  trigger point injections, and a renewal of his salsalate prescription. (Malo-Clines Decl. ¶ 41.)

22  Plaintiff's prescription was refilled for 30 days. (MSJ, Ex. JJ at CDCR 2802-03.) On October

23  26, 2011, Malo-Clines noted that at times, plaintiff was requesting refills of his prescriptions too

24  early. (MSJ, Ex. KK at CDCR 2806.)

25  On November 13, 2011, plaintiff requested a refill of his Tylenol and salsalate. (MSJ,

26  Ex. NN at CDCR 2850.) Medical staff responded that both medications were ordered and would

27  be received in a few days. (*Id.*) On November 14, 2011, plaintiff saw Malo-Clines to receive

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1   trigger point injections for back pain. (Am. Compl. at 8.) Malo-Clines administered two

2   lidocaine injections into plaintiff's lumbar area for pain relief. (Malo-Clines Decl. ¶ 46.) She

3   also ordered that plaintiff continue taking salsalate and Tylenol. (*Id.*) When plaintiff was being

4   escorted back to his cell, one of the escorting officers asked plaintiff why plaintiff was

5   continuing to litigate *Estrada I* when plaintiff was already receiving treatment. (Am. Compl. at

6   8.) Plaintiff felt threatened to drop the lawsuit. (*Id.*) On November 17, 2011, plaintiff's

7   salsalate and Tylenol prescriptions were renewed. (Malo-Clines Decl. ¶ 47.)

8           On December 5, 2011, plaintiff was seen at the clinic complaining about ringing in his

9   ears. (*Id.* ¶ 49.) As a result, plaintiff's salsalate was discontinued. (*Id.*) On December 12, 2011,

10  plaintiff was seen at the clinic and requested that his salsalate be reinstated because even though

11  he wasn't taking salsalate anymore, he still had the ringing in his ear. (*Id.* ¶ 50.) On December

12  13, 2011, Dr. Sayre issued a notification "stopping" plaintiff's Tylenol. (Doc. No. 67 ("Pl.

13  Opp.") at 10.) On December 16, 2011, a verbal order to renew plaintiff's Tylenol was given.

14  (*Id.*) On December 22, 2011, Dr. Sayre again issued a notification stopping plaintiff's Tylenol.

15  (Pl. Opp. at 11.) The following day, Dr. Venes gave plaintiff an order for Tylenol. (*Id.*) On

16  December 30, 2011, Dr. Sayre issued a notification stopping plaintiff's Tylenol. (*Id.*)

17                                      **DISCUSSION**

18  A.   <u>Requests for Judicial Notice</u>

19          Plaintiff requests that the court take judicial notice, pursuant to Federal Rule of Evidence

20  201, of various documents he has submitted in support of his filings. Rule 201 was intended to

21  obviate the need for formal fact-finding as to certain facts that are undisputed and easily verified.

22  Fed. R. Evid. 201; *Melong v. Micronesian Claims Comm.*, 643 F.2d 10, 12 n.5 (D.C. Cir. 1980)

23  (judicial notice under Rule 201 is designed for judicial recognition of scientific or historical fact

24  without resort to cumbersome methods of proof). Rule 201 permits a court to take judicial notice

25  of two kinds of facts: (1) those that are generally known within the court's territorial jurisdiction;

26  and (2) those that are capable of accurate and ready determination by resort to sources whose

27  accuracy cannot reasonably be questioned, for example, an almanac, dictionary, calendar or

28

1  similar source.  In other words, "the fact must be one that only an unreasonable person would

2  insist on disputing."  *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).  Documents

3  that are part of the public record may be judicially noticed to show, for example, that a judicial

4  proceeding occurred or that a document was filed in another court case, but a court may not take

5  judicial notice of findings of facts from another case.  *See Wyatt v. Terhune*, 315 F.3d 1108,

6  1114 & n.5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Nor

7  may the court take judicial notice of any matter that is in dispute.  *Lee*, 250 F.3d at 689-90.

8  First, plaintiff asks the court to take judicial notice of *Ashker v. Sayre*, No. 05-03759

9  (N.D. Cal. filed February 4, 2010).  Defendants oppose the request.  Plaintiff's request that the

10  court take judicial notice of *Ashker* is granted in part and denied in part.  The court will take

11  judicial notice of the proceeding for the limited purpose of proving that such a proceeding

12  occurred.  *See Wyatt*, 315 F.3d at 1144 n.5.  However, to the extent plaintiff wants the court to

13  take judicial notice of *Ashker* to show that Dr. Sayre was deliberately indifferent, the court will

14  not take judicial notice of the facts or findings in that case.  Because the liability of Dr. Sayre is

15  in dispute in this action, the court cannot take judicial notice of that disputed fact.  *See Lee*, 250

16  F.3d at 689.

17  Second, plaintiff asks the court to take judicial notice of "The Abolistionist Newspaper,

18  summer 2013, issue 20: BORDERS, PAGE 12: Peaceful protest to resume (at Pelican Bay State

19  Prison) July 8, 2013, if demands are not met, # (30)."  (Doc. No. 69.)  Plaintiff states that the

20  article will "show that [Dr. Sayre] has implemented a systematic pattern of inadequate medical

21  care at [PBSP] and that inmates are tired of Dr. Sayre's unconstitutional level of medical care."

22  (*Id.*)  The facts contained within this article are not "either (1) generally known within the

23  territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

24  resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

25  Further, plaintiff is submitting this article for the truth of the matter asserted, and therefore, it is

26  hearsay.  Fed. R. Evid. 801(c).  Finally, plaintiff does not provide a copy of this article for the

27  court's review.  Plaintiff's request that the court take judicial notice of the newspaper article is

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1    denied.

2    B.    <u>Motions to Strike and Request for Sanctions</u>[5]

3          Plaintiff requests that the court strike defendants' opposition (doc. no. 77) to plaintiff's

4    motion for summary judgment (doc no. 73) on the retaliation claim.  (Doc. No. 80.)  Specifically,

5    plaintiff alleges that because Malo-Clines failed to file any supporting declarations in

6    defendants' opposition (doc. no. 58) to plaintiff's retaliation claim in plaintiff's first motion for

7    summary judgment (doc. no. 45), the court should strike defendants' opposition.  Defendants

8    have filed an opposition to plaintiff's motion to strike.  (Doc. No. 83.)  Defendants have also

9    requested leave to submit additional evidence in opposition to plaintiff's motion for summary

10   judgment on the retaliation claim.  Plaintiff has filed a reply as well as a motion to strike the

11   additional evidence.  (Doc. No. 84.)  Moreover, plaintiff requests sanctions against Malo-Clines

12   for perjury.  (*Id.*)  Defendants have filed an opposition thereto.

13         As defendants point out, defendants have filed their own motion for summary judgment,

14   which includes supporting evidence such as a declaration from Malo-Clines.  Plaintiff has not

15   cited to any law that allows a court to strike defendants' opposition in its entirety for failing to

16   attach exhibits, especially when defendants have filed exhibits in support of their own motion for

17   summary judgment and cited to those exhibits in their opposition to plaintiff's motion for

18   summary judgment.  Thus, plaintiff's motion to strike is denied.  (Doc. No. 80.)

19         In their opposition to plaintiff's motion to strike, defendants state that they believe that

20   they addressed plaintiff's retaliation claim.  However, defendants note that plaintiff appears to

21   have added or narrowed his claim to one incident that occurred on November 14, 2011.  Thus,

22   out of an abundance of caution, defendants requested permission to submit additional evidence

23   in opposition to plaintiff's more narrow claim about the incident on November 14, 2011.  (Doc.

24   No. 83 at 3.)

25

26         [5] Defendants' motion to for an extension of time to file an opposition to plaintiff's
27   motion to strike is GRANTED.  (Doc. No. 85.)  Defendants' June 27, 2014 opposition is deemed
     timely filed.

28
     Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
     Addressing Pending Motions
     P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1    Here, there is no evidence that defendants engaged in any bad faith or malfeasance, nor

2    has plaintiff provided any reason why defendants should not be allowed to supplement their

3    evidence to support their opposition to plaintiff's retaliation claim.  Thus, pursuant to Federal

4    Rule of Civil Procedure 56(e), defendants' request to submit additional evidence is granted.

5    Plaintiff has also requested sanctions against Malo-Clines for committing perjury in her

6    responses to plaintiff's requests for admissions.  Specifically, plaintiff asserts that in the request

7    for admissions, Malo-Clines denied seeing plaintiff in a medical appointment on November 14,

8    2011.  However, argues plaintiff, in Malo-Clines' declaration in support of defendants' motion

9    for summary judgment, Malo-Clines stated that she saw plaintiff for a medical appointment on

10   November 14, 2011.

11   Federal Rule of Civil Procedure 37(c)(2) allows the court to order reasonable expenses,

12   including attorney's fees, incurred in proving that a party failed to admit the truth of some fact.

13   Here, there is no indication that plaintiff, a *pro se* prisoner, incurred any expenses for bringing

14   this motion.  Moreover, case law has clarified that "Rule 37 does not empower the district court

15   to award attorney fees to a pro se litigant."  *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d

16   1365, 1376 (Fed. Cir. 2002).  Finally, in the Northern District of California, any motion for

17   sanctions must, *inter alia*, be separately filed.  *See* Civil L.R. 7-8(a).  Under Civil Local Rule 7-

18   8, a motion for sanctions must comply with the following: (1) the motion must be separately

19   filed; (2) the form of the motion must comply with Civil Local Rule 7-2; (3) the motion must

20   comply with all applicable federal civil rules of procedure, and must be made as soon as

21   practicable after the movant learns of the circumstances alleged to warrant sanctions; and (4)

22   must be served and filed less than 14 days after entry of judgment.  *See* Civil L.R. 7-8.

23   Plaintiff's request for sanctions was combined with other requests, and thus, fails to comply with

24   the Civil Local Rules.  For all the above reasons, plaintiff's request for sanctions is denied.

25   (Doc. No. 84.)

26

27

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

C.    <u>Motions for Summary Judgment</u>

   1.    <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence

must be viewed in the light most favorable to the nonmoving party, and the inferences to be

drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at

631.

2.    Eighth Amendment

Plaintiff claims that Dr. Sayre and Malo-Clines were deliberately indifferent to his

serious medical needs because they interfered with or delayed his receipt of pain medication.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official violates the Eighth

Amendment only when two requirements are met: (1) the deprivation alleged is, objectively,

sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's

health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result

in further significant injury or the "unnecessary and wanton infliction of pain." *Id.*  The

existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain are examples of

indications that a prisoner has a "serious" need for medical treatment. *McGuckin v. Smith*, 974

F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v.*

*Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a

substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837.  The official

must both know of "facts from which the inference could be drawn" that an excessive risk of

harm exists, and he must actually draw that inference. *Id.*  "A difference of opinion between a

prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983

claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a claim of medical

malpractice or negligence is insufficient to establish a violation of the Eighth Amendment.

*McGuckin*, 974 F.2d at 1059.  In particular, a plaintiff's opinion that medical treatment was

1 unduly delayed does not, without more, state a claim of deliberate indifference. *Shapley v.*

2 *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

3    The parties do not dispute that plaintiff's back pain is a serious medical condition.

4 Assuming that this is a serious medical need, plaintiff has failed to raise a triable issue of fact

5 that defendants acted with deliberate indifference.

6    The undisputed evidence shows that during 2011, plaintiff was provided pain medication

7 in the forms of Tylenol and salsalate, and was given trigger point injections as well as lidocaine

8 injections for his leg and hip pain.  The record does not show or support a reasonable inference

9 of deliberate indifference by defendants in their treatment of plaintiff's back pain.

10    The record demonstrates that Malo-Clines spoke with or examined plaintiff on February

11 17, 2011; March 10, 2011; April 15, 2011; May 10, 2011; July 8, 2011; August 3, 2011; August

12 8, 2011; and November 14, 2011.  (Malo-Clines Decl. ¶¶ 13, 14, 18, 19, 29, 30, 34, 46.)  During

13 those interactions, Malo-Clines responded to plaintiff's complaints by recommending that

14 plaintiff continue his yoga and in-cell physical therapy program; continuing the trigger point

15 injections; continuing the salsalate and Tylenol; administering lidocaine and Kenalog for pain

16 relief; and re-evaluating the medications plaintiff was being prescribed.  In fact, plaintiff

17 concedes that defendants did provide trigger point injections and pain medications.  (Opp. at 19.)

18    Regarding plaintiff's specific allegation that Malo-Clines was interfering with his receipt

19 of pain medication, plaintiff does not provide any evidence to support this claim.  At most, the

20 delay between plaintiff requesting a refill of his pain medication and the time those requests

21 were granted was a matter of a few days.  Moreover, there is no indication that Malo-Clines was

22 aware of each and every time plaintiff requested a refill via the health services form.  At times,

23 other medical professionals ordered the prescription to be refilled.

24    For example, in May 2011, five days lapsed between when plaintiff requested a refill of

25 his salsalate and when Malo-Clines issued a verbal order to refill plaintiff's prescription.  (Am.

26 Compl. at 8; Doc. No. 45-2, Ex. D at 2-3; Malo-Clines Decl. ¶ 20; MSJ, Ex. O at CDCR 2466,

27 2474.)  Also, one day lapsed between May 22 and May 23, 2011 from when plaintiff requested a

28

1    refill of his salsalate, ranitidine, and Tylenol, and Nurse Flowers responded that all medications

2    had been refilled.  (MSJ, Ex. Q at CDCR 2486.)  In June 2011, four days elapsed between when

3    plaintiff requested a refill of his salsalate and when Physical Therapist Tewelde stated that

4    plaintiff's salsalate could be refilled.  (MSJ, Ex. T at CDCR 2574-75; Malo-Clines Decl. ¶ 25.)

5    Then, plaintiff requested a refill of his salsalate on June 24 and June 30, and Malo-Clines

6    responded by giving a verbal order for the prescription to be renewed for 30 days.  (Malo-Clines

7    Decl. ¶ 27.)  On July 4, 12, and 24, 2011, plaintiff's requests for refills of his Tylenol and

8    salsalate prescriptions were reviewed and granted.  (MSJ, Ex. W.)  In August 2011, two days had

9    elapsed between plaintiff's request for pain medication and the date on which Malo-Clines

10   issued a verbal order to refill plaintiff's prescription.  (Opp. at 6; MSJ, Ex. Z at CDCR 2653-54;

11   Malo-Clines Decl. ¶ 31.)  A few weeks later, six days elapsed between plaintiff's request for

12   pain medication and the date on which Nurse Flowers indicated that plaintiff's prescriptions for

13   salsalate and Tylenol were refilled.  (Malo-Clines Decl. ¶ 33.)  In September 2011, plaintiff

14   requested refills of his Tylenol and salsalate.  (MSJ, Ex. DD at CDCR 2708-09; Doc. No. 45-2 at

15   7.)  Malo-Clines denied plaintiff's salsalate prescription refill request until a urinalysis could be

16   performed so that Malo-Clines could verify that plaintiff was actually taking the medication.

17   (Malo-Clines Decl. ¶ 35.)  On September 15, 2011, after Malo-Clines reviewed the lab work, she

18   gave a verbal order to refill plaintiff's salsalate prescription for thirty days.  (*Id.*; MSJ, Ex. DD at

19   CDCR 2734, 2738.)  Based on this undisputed evidence, plaintiff has not shown that Malo-

20   Clines exhibited deliberate indifference.

21          To the extent plaintiff is alleging that defendants caused the temporary delays in his

22   receipt of pain medication, periodic and temporary lapses of a few days to receive pain

23   medication such as are alleged here are insufficient to amount to deliberate indifference.  In

24   *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990), a prisoner injured his shoulder in a

25   jailhouse fight.  *Id.* at 1333.  A physician inserted two pins in the prisoner's shoulder and

26   prescribed a sling.  One of the pins eventually fell out, causing the prisoner pain.  *Id.*  The doctor

27   prescribed an anti-inflammatory and pain-killing medication and recommended referral to an

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1   outside orthopedic specialist. *Id.* Despite the doctor's orders, the prisoner received no medical

2   treatment or pain medication for approximately two months.  The Ninth Circuit concluded that

3   in order to sustain a claim of deliberate indifference the delay in the prisoner's treatment must

4   have caused "substantial harm".  However, based on the treatment the prisoner received, and the

5   seriousness of the prisoner's condition, the prisoner did not show such "substantial harm" to

6   warrant an Eighth Amendment violation. *Id.* at 1335.  Moreover, the Ninth Circuit reasoned that

7   the delay could not have substantially harmed the prisoner's treatment, "considering that the only

8   remedy immediately available was a prescription for painkillers." *Id.*  Similarly here, a delay of

9   a few days between plaintiff's requesting a refill of his pain medication, and Malo-Clines' order

10  to refill the prescription could not have substantially harmed plaintiff.  *See id.*  In addition to the

11  pain medications that plaintiff was prescribed, the evidence is undisputed that Malo-Clines

12  ordered other treatments, in accordance with the specialist's recommendations, to alleviate

13  plaintiff's back pain.  (Malo-Clines Decl. ¶¶ 18, 29, 30, 42, 46.)

14          Moreover, there is an absence of evidence that defendants interfered with or had any

15  knowledge of when or how plaintiff received his medication.  Despite plaintiff's conclusory

16  allegations, there is an absence of evidence that Malo-Clines or Dr. Sayre had a responsibility to

17  investigate or ensure that plaintiff received his medications, once Malo-Clines or another

18  practitioner ordered plaintiff's prescriptions.  Indeed, Malo-Clines declares that she had no

19  involvement in the dispensing or refilling of plaintiff's medications as that task is undertaken by

20  Maxor and the nursing staff.  (Malo-Clines Decl. ¶ 37.)  Plaintiff argues that whether or not he

21  received his pain medication is a material fact in dispute.  (Opp. at 18.)  However, the

22  determination of that fact is not relevant or material to defendants' liability without any evidence

23  to support plaintiff's assumption that Malo-Clines or Dr. Sayre had a responsibility to ensure that

24  plaintiff received that medication.

25          Further, although plaintiff states that he "continuously complained" about not receiving

26  his medication, there is an absence of evidence that defendants knew plaintiff was not receiving

27  his medication or that there was any delay in plaintiff's receipt of medication.  Plaintiff's

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1  documentary evidence in support of his assertion that Malo-Clines knew that he was not

2  receiving medication is unpersuasive.  (Opp. at 19, citing Ex. G at 13, 24, 25.)  The first

3  document is dated in 2010, which precedes the scope of this lawsuit.  (*Id.*, Ex. G at 13.)  The

4  second document is a copy of plaintiff's health services request form, dated October 11, 2011,

5  which is addressed to Malo-Clines and claims that plaintiff has been having problems receiving

6  his pain medication refills.  (*Id.*, Ex. G at 24.)  However, in response, a medical staff member

7  directed plaintiff to file a "request for interview" form if he wished to communicate with his

8  primary care physician.  (*Id.*)  The final document to which plaintiff cites is a copy of his

9  October 12, 2011 request for an interview form.  (*Id.*, Ex. G at 25.)  Plaintiff addressed the

10  request to Malo-Clines, however, the response stating that plaintiff does not have a current

11  salsalate prescription appears to be written by someone else.  (*Id.*)  The form itself states, "you

12  will be called in for an interview in the near future if the matter cannot be handled by

13  correspondence."  (*Id.*)  None of the documents provides evidence that Malo-Clines received

14  notice that plaintiff was not receiving his medication.

15      With respect to Dr. Sayre, plaintiff claims that Dr. Sayre failed to stop the interference

16  with plaintiff's receipt of pain medication, and further, directly interfered with plaintiff's receipt

17  of medication in December 2011 and January 2012.  (Doc. No. 45 at 5-6.)  Specifically, plaintiff

18  asserts that in December 2011, and January 2012, Dr. Sayre stopped plaintiff's medication

19  several times for non-medical reasons.  (*Id.* at 6.)  Dr. Sayre declares that, according to prison

20  procedure, on December 12, 2011, Dr. Sayre issued a notification regarding plaintiff's

21  acetaminophen prescription because the prescription was about to expire.  (Sayre Decl. ¶ 52.)

22  Because of the imminent expiration, Dr. Sayre issued a notation for the prescription to be

23  stopped (MSJ, Ex. SS at CDCR 2911) to ensure that plaintiff's primary care physician reviewed

24  the expiring order and determined whether it was medically necessary to renew the prescription.

25  (Sayre Decl. ¶ 52.)  After being notified about the discontinuation of plaintiff's acetaminophen,

26  on December 16, 2011, plaintiff's primary care physician renewed plaintiff's prescription.  (*Id.*)

27  On December 22, 2011, again, Dr. Sayre noticed that plaintiff's prescription was ending, so Dr.

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

1    Sayre issued another notification for plaintiff's primary care physician to renew if medically

2    necessary. (*Id.* ¶ 54.) The following day, on December 23, 2011, plaintiff's prescription was

3    renewed. (*Id.*)

4          In order for deliberate indifference to be established, there must be a purposeful act or

5    failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060.

6    Here, although Dr. Sayre purposefully "stopped" plaintiff's prescriptions for Tylenol prior to its

7    expiration date several times, Dr. Sayre did so in order to notify medical staff to re-evaluate

8    plaintiff's need for such medication. (Sayre Decl. ¶ 52.) On both occasions, the medications

9    were renewed by medical staff. Plaintiff does not provide any viable evidence disputing Dr.

10   Sayre's statement. Further, plaintiff does not provide any clear evidence that he was without

11   Tylenol during December 2011 or January 2012 based on Dr. Sayre's orders to stop the

12   prescription. Moreover, plaintiff does not assert that he suffered any harm as a result of Dr.

13   Sayre's orders. Without such evidence, there is an absence of evidence that Dr. Sayre directly

14   interfered with plaintiff's pain medication in a way that exhibited deliberate indifference to

15   plaintiff's medical needs.

16         With respect to plaintiff's assertion that Dr. Sayre failed to stop the interference with

17   plaintiff's receipt of pain medication, plaintiff has failed to demonstrate that Dr. Sayre was aware

18   that plaintiff was not receiving his medications in a timely manner. While plaintiff asserts that

19   Dr. Sayre was put on notice when plaintiff complained to medical staff about his medication

20   prescriptions, plaintiff does not provide any evidence that Dr. Sayre was deliberately indifferent

21   to these complaints. For example, some of the documents plaintiff has provided in support of his

22   claim are of records that precede the events involved in this lawsuit. (Pl. Opp. at 21, Exs. D, E,

23   F, H, I, M.) Plaintiff has also provided Dr. Sayre's June 22, 2011 response to plaintiff's

24   administrative grievance in which plaintiff requested, *inter alia*, that he receive trigger point

25   injections immediately. (*Id.*, Ex. T at 1, 6.) In the response, Dr. Sayre granted plaintiff's

26   request, and noted that on March 8, 2011, Malo-Clines gave plaintiff four lidocaine injections,

27   and on April 28, 2011, Dr. Martinelli gave plaintiff an injection of kenalog. (*Id.* at 6.) Other

28

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

documents submitted by plaintiff demonstrate that plaintiff submitted administrative grievances complaining that he was not receiving his pain medication, however, there is no indication that Dr. Sayre received these documents. (*Id.*, Ex. U, W.) In fact, the documents suggest that one appeal was returned to plaintiff for failure to submit supporting documents. (*Id.*, Ex. U at 5-8.)

Dr. Sayre did respond to several of plaintiff's administrative appeals. In one appeal, plaintiff complained that he felt his medication was being interfered with and wanted the interference to stop. (*Id.*, Ex. V at 3.) In response, Dr. Sayre granted plaintiff's appeal and noted that there was no evidence of retaliation, and plaintiff's salsalate was renewed. (*Id.* at 8.) In December 2011, plaintiff again filed an administrative appeal, demanding a salsalate refill and to be prescribed an alternate pain medication. (*Id.*, Ex. X at 3.) Dr. Sayre denied plaintiff's appeal, explaining that plaintiff's salsalate had been discontinued by Physician's Assistant L. Thomas because plaintiff had been complaining of gastrointestinal discomfort. (*Id.*) Dr. Sayre then noted that, on February 13, 2012, Physician's Assistant L. Thomas evaluated plaintiff again, administered a kenalog injection, and advised plaintiff to alternate cold and warm compresses. (*Id.*) In none of these responses can it be said that Dr. Sayre exhibited deliberate indifference in his treatment of plaintiff.

Finally, plaintiff points to a memorandum authored by Dr. Sayre in 2008 directing prison medical staff to deny essential and constitutional medical care. (Doc. No. 72, Ex. FF.) However, a review of that memorandum in fact reveals that Dr. Sayre issued a notice to medical providers that the prison was short staffed in terms of medical providers. (*Id.*) Dr. Sayre instructed all providers "to give only the most essential constitutional care. No common, minor, or uncomfortable issues should be addressed. . . . Move on to essential care." (*Id.*) Nothing in the 2008 memorandum displays a policy or custom wherein Dr. Sayre encouraged medical staff to deny constitutional care.

In sum, plaintiff fails to raise a triable issue of fact that defendants were deliberately indifferent to his serious medicals needs by interfering with his receipt of pain medication.

1   Defendants are entitled to summary judgment on plaintiff's deliberate indifference claim.[6]

2       3.   Retaliation

3       Plaintiff claims that, on November 14, 2011, plaintiff was seen by Malo-Clines for

4   trigger point injections for his back pain. (Am. Compl. at 7.) When plaintiff was being escorted

5   back to his cell, the escorting officers, Correctional Officer Trimm and Cardenas, asked plaintiff

6   why plaintiff was still litigating *Estrada I* if plaintiff was receiving treatment. (*Id.*; Doc. No. 73

7   at 3.) Plaintiff felt intimidated, and believed that the officers were threatening plaintiff to drop

8   *Estrada I*.[7] (Am. Compl. at 7; Doc. No. 80 at 1.)

9       "Within the prison context, a viable claim of First Amendment retaliation entails five

10  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

11  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

12  exercise of his First Amendment rights, and (5) the action did not reasonably advance a

13  legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)

14  (footnote omitted).

15      Based on the undisputed facts, plaintiff has failed to establish that Malo-Clines took any

16  adverse action against him, or that she took such action based on *Estrada I*. That plaintiff

17  believes Malo-Clines "must of told [the officers] of the lawsuit" [sic] is based on nothing but

18  speculation. Moreover, even assuming that Malo-Clines told the officers about the lawsuit, that

19  communication can hardly be seen as an "adverse action." Plaintiff would like the court to infer

20  that not only did Malo-Clines inform the officers about *Estrada I*, but Malo-Clines also

21

22      [6] Because the court is granting defendants' motion for summary judgment as to this
23  claim, it is unnecessary to address defendants' argument for qualified immunity.

24      [7] To the extent plaintiff claims that Malo-Clines retaliated against him by interfering
    with plaintiff's receipt of medication because plaintiff was litigating *Estrada I*, there is an
25  absence of evidence that Malo-Clines took any adverse action against plaintiff. Plaintiff's
    allegations that Malo-Clines failed to ensure that plaintiff received the medication are
26  unsupported by any evidence that Malo-Clines was responsible for doing so. In addition,
    plaintiff appears to have narrowed his retaliation claim to encompass solely this November 14,
27  2011, incident. (Doc. No. 70, Doc. No. 80 at 3.)

28
    Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
    Addressing Pending Motions
    P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

instructed them to intimidate plaintiff because of the lawsuit.  However, the facts as presented by plaintiff do not give rise to a reasonable inference that Malo-Clines actions were "because of" plaintiff's prior lawsuit against her.  *See Wood v. Yordy*, No. 12-35336, 2014 WL 2462575, *4 (9th Cir. June 3, 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (making a distinction between a set of events that "could conceivably have occurred" and a set of facts that one could reasonably infer in fact occurred).

Nor has plaintiff presented any circumstantial evidence of motive, which normally includes, "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual."  *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011).

The retaliatory act of which plaintiff complains occurred on November 14, 2011. *Estrada I* was filed over a year earlier, on October 25, 2010.  Thus, the timing of the incident does not support an inference of motive.  *See id.* (citing *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004) (recognizing that a thirteen month lapse is too long to support an inference of causality)).  Next, there is no evidence demonstrating that Malo-Clines expressed any opposition to Malo-Clines' prior lawsuit.  *See id.*  Similarly, because there is no evidence that Malo-Clines expressed opposition to plaintiff's prior lawsuit, factor 3 regarding whether Malo-Clines' proffered reasons were pretextual or false is inapplicable.  *See id.*  Finally, there is no evidence to infer that Malo-Clines had any conversation with the correctional officers regarding plaintiff's prior lawsuit.

In sum, plaintiff fails to raise a triable issue of fact that Malo-Clines retaliated against him for litigating *Estrada I*, and defendants are entitled to summary judgment on plaintiff's retaliation claim.[8]

---

[8]  Because the court is granting defendants' motion for summary judgment as to this claim, it is unnecessary to address defendants' argument for qualified immunity.

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment; Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd

**CONCLUSION**

Plaintiff's motion for leave to file a sur-reply is GRANTED.  (Doc. No. 81.)  Plaintiff's requests for judicial notice are DENIED.  Plaintiff's motion to strike defendants' opposition to plaintiff's motion for summary judgment is DENIED.  (Doc. No. 80.)  Defendants' motion for an extension of time to file an opposition to plaintiff's motion to strike is GRANTED.  (Doc. No. 85.)  Plaintiff's motion to strike defendants' request to submit additional evidence and for sanctions is DENIED.  (Doc. No. 84.)

Defendants' motion for summary judgment is GRANTED.  (Doc. No. 55.)  Plaintiff's motions for summary judgment are DENIED.  (Doc. Nos. 45, 73.)  Judgment shall be entered in favor of defendants.  The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED:   7/28/14                         _____
                                        LUCY H. KOH
                                        United States District Judge

Order Granting Defendants' Motion For Summary Judgment; Denying Plaintiff's Motions for Summary Judgment;
Addressing Pending Motions
P:\PRO-SE\LHK\CR.12\Estrada592msjgrant.wpd